UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARCOS P.A.,[1]

Petitioner,

v.

WARDEN, CALIFORNIA CITY DETENTION FACILITY,

Respondent.

No. 1:26-cv-05638-TLN-CKD

(A# 220-662-959)

**ORDER**

This matter is before the Court on Petitioner Marcos P.A.'s ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) Respondent filed an opposition. (ECF No. 6.) Petitioner filed a reply. (ECF No. 10.) For the reasons set forth below, Petitioner's habeas petition is GRANTED.[2]

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] On August 12, 2026, this Court issued a minute order granting the Petition and ordering Petitioner's immediate release. (ECF No. 12.) This Order explains the Court's reasoning.

## I. Factual and Procedural Background[3]

This matter arises from Petitioner's allegedly unlawful detention by immigration authorities. (ECF No. 1.)

Petitioner is a noncitizen who first entered the United States on August 25, 2021. (ECF No. 6 at 6.) He was detained by U.S. Border Patrol agents and stated that he feared returning to his native country. (*Id.* at 7.) Shortly thereafter, he left to travel to Chile to be with his daughter during her heart surgery. (*Id.*) Removal proceedings were initiated against Petitioner and on June 2, 2023, an immigration judge issued an order of removal in his case *in absentia*. (*Id.*) Petitioner attempted to enter the country on or about January 29, 2024,[4] and was again detained by U.S. Border Patrol agents. (*Id.* at 6.) He was released on his own recognizance on February 24, 2024. (ECF No. 1 at 10.) Immigration and Customs Enforcement ("ICE") arrested him on July 1, 2026, in order to execute the 2023 order of removal. (ECF No. 6 at 6.) He was subsequently transferred to the California City Detention Facility. (ECF No. 1 at 1.)

Petitioner's wife submits a statement in his support, describing how they met, his role as a father figure in her son's life, their efforts to have another child, including the effects of a previous miscarriage, and the impact of his current detention during her pregnancy. (*Id.* at 28–31.) Petitioner, too, states that his detention has caused "ongoing physical health problems as well as . . . emotional distress [due to being separated from] my 8[] month[s] pregnant wife." (*Id.* at 10.)

Petitioner filed the instant Petition for Writ of Habeas Corpus on July 20, 2026, challenging the lawfulness of his detention. (*Id.*)

## II. Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)

---

[3] These facts are either taken from Respondent's opposition to the habeas petition or are not disputed by Respondent.

[4] Petitioner states that the date was January 28, 2024. (ECF No. 1 at 10.) For the reasons set forth below, this difference is immaterial.

(citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner challenges his continued detention as violating the Immigration and Nationality Act and the Fifth Amendment's Due Process Clause.[5] (*See* ECF No. 1 at 6–12.) In opposition, Respondent contends that this Court lacks jurisdiction to entertain Petitioner's claims pursuant to 8 U.S.C. § 1252(g), and that Petitioner is lawfully detained under 8 U.S.C. § 1231. (ECF No. 6.)

### A. Jurisdiction

Congress has stripped jurisdiction from the federal courts to review "any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter." 8 U.S.C. § 1252(g). However, "this provision applies only to the three specific discretionary actions mentioned in its text, not to all claims relating in any way to deportation proceedings." *Cath. Soc. Servs., Inc. v. I.N.S.*, 232 F.3d 1139, 1150 (9th Cir. 2000). The Ninth Circuit has instructed courts "to read the statute narrowly." *Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018).

Petitioner does not challenge any discretionary act of the Attorney General or seek to enjoin his removal from this country. Rather, he seeks the protection of the writ of habeas corpus

---

[5] Petitioner also claims that his detention is impermissibly prolonged pursuant to *Zadvydas*, 533 U.S. 678. (ECF No. 10 at 4.) Because the Court finds Petitioner is entitled to relief on his INA and Due Process claims, it declines to address his *Zadvydas* claim in the interest of judicial economy.

and review of the legality of his detention pending removal. Indeed, the Ninth Circuit has explicitly held that "8 U.S.C. § 1252(g) . . . does not preclude the federal courts from exercising jurisdiction over [a 28 U.S.C.] § 2241 habeas petition." *Barapind v. Reno*, 225 F.3d 1100, 1109 (9th Cir. 2000).

Thus, the Court has jurisdiction to entertain the petition notwithstanding 8 U.S.C. § 1252(g).

B. <u>Detention Authority</u>

Respondent argues that Petitioner's detention is lawful under 8 U.S.C. § 1231 which allows the government to continue to detain a noncitizen during and beyond the "removal period" under certain circumstances. Section 1231 defines the "removal period" within which the "Attorney General shall detain [a noncitizen]" as a 90-day period beginning on the latest of:

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.
> (iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Petitioner has not appealed his removal order or sought judicial review. Thus, Petitioner's order of removal had long since become administratively final, and the removal period ended before his re-detention on July 20, 2026. *See Cui v. Garland*, 13 F.4th 991, 996 (9th Cir. 2021) (explaining that a removal order issued *in absentia* becomes administratively final after the expiration of the 180-day deadline to file a motion to reopen the non-citizen's immigration case). "As soon as [the removal period lapsed], Petitioner entered the post-removal period and was no longer subject to § 1231(a)(2)(A)'s mandatory detention requirement." *Berhe v. Mattos*, No. 2:25-CV-01782-RFB-DJA, 2026 WL 222302, at *5 (D. Nev. Jan. 28, 2026) at *4.

In the post-removal period, under 8 U.S.C. § 1231(a)(6), "DHS may continue to detain a noncitizen who is: (i) inadmissible; (ii) removable under certain provisions of [8 U.S.C.] § 1227(a); (iii) a risk to the community; or (iv) unlikely to comply with their removal order." *Id.* at

*3. But when a noncitizen, such as Petitioner, has been released from immigration detention, certain ICE regulations govern how and when the agency may revoke that release and re-detain the non-citizen. *See* 8 C.F.R. §§ 241.13(i), 241.4(l) ("ICE Regulations").

Under the ICE Regulations governing revocation of release, ICE may re-detain a noncitizen if, for example, the noncitizen "violates the conditions of release" or "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. §§ 241.4(l)(1); 241.13(i)(2). Upon revocation of release, the noncitizen "will be notified of the reasons for the revocation of his or her release," and will be given "an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3).

"ICE, like any agency, 'has the duty to follow its own federal regulations.'" *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (reversing dismissal of habeas petition where Board of Immigration Appeals failed to follow its own regulations). There is no evidence in the record which shows that Petitioner was provided an opportunity to respond to the reasons his release was revoked let alone provided notice of such reasons. Such actions clearly violate the ICE Regulations. 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3); *see Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Because there is no indication that ICE Regulations were followed . . . [petitioner's] re-detainment was unlawful."); *Truong v. Noem*, No. 25-CV-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (granting habeas petition where the government failed to provide notice to petitioner until nearly three months after detaining him and failing to conduct an informal interview).

Thus, the Court finds that Petitioner's re-detention violated the INA.

C. Fifth Amendment Due Process Claim

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Sessions*, 872 F.3d

976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings, including deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

*i. Liberty Interest*

As discussed above, the INA permits the re-detention of non-citizens in order to effectuate a final order of removal. This fact, however, does not strip them of the protection of the Fifth Amendment's Due Process Clause.

The Supreme Court has found that, as a matter of statutory construction:

> there is no plausible construction of the text of § 1231(a)(6) that requires the Government to provide bond hearings before immigration judges . . . . On its face, the statute says nothing about bond hearings before immigration judges or burdens of proof, nor does it provide any other indication that such procedures are required.

*Johnson v. Arteaga-Martinez*, 596 U.S. 573, 581 (2022).

However, in that case, "the Court declined to resolve in the first instance any constitutional challenges to the continued detention." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201 (9th Cir. 2022). Indeed, when the high court has spoken on this issue, it has stated that mandatory detention provisions under the INA "do[] not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it." *Nielsen v. Preap*, 586 U.S. 392, 420 (2019). "The most reasonable interpretation of *Preap* is that immigration detainees retain procedural due process rights notwithstanding the operation of a statute providing for a detainee's mandatory detention." *Doe v. Chestnut*, No. 1:25-CV-01372-CDB, 2026 WL 1459808, at *3 (E.D. Cal. May 25, 2026). Thus, the Court concludes that Petitioner may raise an as-applied due process challenge to his detention regardless of the applicability of 8 U.S.C. § 1231.

Courts examine procedural due process claims in two steps: the first asks whether there

exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. S*ee Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

As to step one, the Court finds Petitioner gained a protected liberty interest in his continued freedom when he was released by Respondent. (ECF No. 1 at 10); *see Morrissey*, 408 U.S. at 482 ("The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. . . . Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life."). Even if that freedom could be revoked by statute, Petitioner's liberty is still protected by the Due Process Clause. *See Hernandez*, 872 F.3d at 993, *Zadvydas*, 533 U.S. at 693.

Petitioner has lived in this country since 2024, supporting his partner and her son, developing substantial ties to his community, and enduring connections of normal life. (ECF No. 1 at 28–31.) The government's decision to seize and re-detain him has deprived him of those connections, causing severe harm to him and his loved ones. (*Id.* at 31 (Petitioner's partner "ask[s] that, within the bounds of the law, the human aspect of this case be considered, along with the well-being of two children who rely heavily on [Petitioner's] presence in their lives. With humility and a heart full of hope, I ask the person reading these words to imagine, even for a moment, what it would be like to face the birth of a daughter far away from the man with whom I dreamed of building a family, all while trying to keep a four-year-old boy strong—a boy who asks every day when the man he calls 'Dad' will return."); *cf. Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019) (quoting *Jamal v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)) ("It is important to bear in mind the context: The detention that is being examined here is the detention of a human being who has never been found to pose a danger to the community or to be likely to flee if released.").

Petitioner therefore has a clear interest in his continued freedom. *See, e.g.*, *Doe v.*

*Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest). Accordingly, Petitioner has a clear interest in his continued liberty protected by the Due Process Clause.

*ii. Process Required*

To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, these factors support Petitioner's constitutional right to notice and a pre-deprivation hearing.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by the government's actions detaining him. The amount of time Petitioner spent at liberty underscores the gravity of its loss. *See Doe*, 787 F. Supp. 3d at 1094. Accordingly, this factor weighs in favor of finding Petitioner has a significant private interest that has been affected by his detention.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process. *Zadvydas*, 533 U.S. at 690. While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards to ensure any detention is reasonably related to those purposes. *Hernandez*, 872 F.3d 976. As Respondent does not argue Petitioner is a danger to the public or a flight risk, and Petitioner has no criminal history and has demonstrated ties to his community in this country, the risk that he is being detained without proper justification is exceedingly high. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025

WL 1424382, at *5 (E.D. Cal. May 16, 2025). Additionally, while Respondent claims that "[t]he government is on the cusp of executing Petitioner's final order of removal," the government submits no evidence in support of that contention other than the 2023 order of removal in Petitioner's immigration case. (*See generally* ECF No. 6.) The bald assertion that the government is in the process of executing that order does not convince the Court that it is so.

Third, the government's interest in detaining Petitioner without notice and a pre-deprivation hearing is low. The effort and cost required to provide Petitioner procedural safeguards are minimal. *See Doe*, 787 F. Supp. 3d at 1094. Notice and custody determination hearings are routine processes for Respondent. Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation. Respondent articulates no legitimate interest in detaining Petitioner absent these processes.

Upon consideration of the *Mathews* factors, the Court finds Petitioner was entitled to notice and a hearing before a neutral decisionmaker prior to his detention and received neither. Petitioner's detention thus violates the Fifth Amendment Due Process Clause.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.)

1. Respondent is ENJOINED from re-detaining Petitioner absent compliance with statutory and constitutional protections, including a minimum of seven-days' pre-deprivation notice and strict compliance with the requirements of 8 C.F.R. §§ 241.13(i), 241.4(l), or a pre-deprivation hearing before a neutral factfinder where Respondent shows by clear and convincing evidence that material changed circumstances demonstrate (a) a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention. At any such hearing, Petitioner shall be allowed to have counsel present.

//

//

2. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: August 14, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE